UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDALLAH BISHARA<br>d/b/a<br>UNCLE ABE'S PHILLIP 66,<br>Individually and on<br>behalf of all others<br>similarly situated, | : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action No. |
| Plaintiff, | : | CLASS ACTION COMPLAINT |
| v. | : | |
| VISA U.S.A, INC., | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## CLASS ACTION COMPLAINT

1. Plaintiff brings this class action on behalf of all merchants in the United States that were overcharged for Visa interchange fees as a result of Defendant's violation of the federal antitrust laws. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. §§ 15(a) and 26.

2. Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 22 and 26 and 28 U.S.C. § 1391. Defendant is licensed to do business in or is doing business in this district and throughout Pennsylvania. The interstate trade and commerce described in this Complaint occurs in substantial part within this district.

## Plaintiff

3. Plaintiff Abdallah Bishara is the sole proprietor of Uncle Abe's Phillip 66, a gasoline station and convenience store with its principal place of business at 4203 Asher Avenue, Little Rock, AR 72204. Plaintiff accepts both Visa and MasterCard credit cards, and during the class period has paid interchange fees to Defendant and its member co-conspirators.

4. Plaintiff has been in business since 1997, selling gasoline and sundries.

## Defendant

5. Defendant Visa U.S.A., Inc. ("Visa") is a Delaware corporation, with its principal place of business in San Francisco, California.

6. At all relevant times, Visa was a national association including more than 6,000 banks. Visa transacts business in this district.

7. Visa is responsible for organizing the activities of its member banks that issue Visa credit cards, which includes providing access to VisaNet.

8. Any business that is eligible for Federal Deposit Insurance Corporation deposit insurance can join Visa. In exchange for the financial institution's right to issue a Visa brand payment card, the financial institution must follow Visa's bylaws.

2

## FACTUAL ALLEGATIONS

9. Visa is an association of member banks. "Issuer banks" issue Visa brand payment cards to their customers. "Acquirer banks" acquire and serve merchant Visa accounts. Commonly, member banks function both as "issuer banks" and as "acquirer banks."

10. Merchants wishing to accept Visa brand payment cards from their customers must assent to boilerplate contracts that Visa provides to the acquirer banks. One clause common to these boilerplate contracts is the No-Surcharge Rule. Although the exact language of the clause may vary, the effect is identical across these boilerplate contracts and it in essence states that the merchant shall not charge any additional fee for accepting a Visa brand payment card and shall not do anything to discourage, favor or discriminate against the use of any particular payment card.

11. On behalf of Visa, acquirer banks charge merchants "discount fees" connected with processing transactions on the Visa network. The majority of these fees are "interchange fees," which are fees collected by the issuing bank. The balance of the discount fee is paid to the acquirer bank and to the association itself. Visa sets the rate of the interchange fee and it typically comprises 80% or more of the total discount fee.

12. The discount fees charged to merchants for using various payment card types vary widely. For example, an individual merchant may pay 3.00% on each American Express brand payment card transaction in discount fees, 2.00% on

3

each Visa credit transaction, and only 1.00% for each Visa debit transaction. Obviously, cash transactions are not subjected to such a charge.

13. Four customers, each armed with one of the payment methods noted in the preceding paragraph will pay the same for the same product although the amount realized by the merchant varies based on the payment method. By illustration, in the case of a $100.00 purchase, the merchant will receive $97.00 in the American Express transaction, $98.00 in the Visa credit transaction, $99.00 from the Visa debit transaction and the full sale price of $100.00 from the cash payment.

14. Were the No-Surcharge Rule not in place, merchants would be free to post information to their customers about their costs to accept each method of payment. Customers would then opt to use less costly payment methods. The resulting shift from higher-priced transactions to lower-priced ones would result in competition, forcing those with higher discount fees to lower the fees or risk losing market share.

15. The No-Surcharge Rule also prevents merchants from passing the discount fee associated with a payment method to the customer actually using the payment method. Rather, by preventing a merchant from collecting a fee from a customer to use a certain method of payment, the No-Surcharge Rule promulgated by Visa ensures that merchants will recoup the discount fees by raising prices to all customers. Consequently, this forces cash payors and others that would avoid using high transaction cost payment cards to subsidize the costs incurred by those using

4

high transaction cost payment methods. Consumers shifting to lower transaction cost payment methods would result in competition between the high transaction cost companies, ultimately producing lower prices for goods and services since the prices would no longer be inflated to compensate for overly large discount fees.

16. More insidiously, consumers using low transaction cost payment methods are subsidizing not only the transaction fees of high transaction cost payment method users, but also the costly perquisites of using such methods, such as the accrual of frequent flyer miles, free gifts, and cash rewards. The revenue generated by the discount fees pays, in part, for these customer loyalty programs. Since these fees are paid by the merchant and consequently passed to all customers, the customers using low transaction cost payment methods are being charged to keep the high transaction cost payment users pleased with their payment choices and ensure that they do not use other payment methods.

17. This scheme sets up a feed forward loop benefiting mostly Visa and, to a lesser extent, its credit card users at the ultimate expense of those who choose low transaction cost payment methods. The more payors that use their Visa credit cards, the more that merchants (and consequently, all of their customers) have to pay in discount fees. The more fees collected by Visa, the greater the perquisites available to the Visa card users. The greater the perquisites, the more people will opt to use their Visa credit cards.

18. Conversely, if the transaction fees were passed directly to the user of the transaction payment method, the users themselves would pay for the

5

convenience they receive from using such a method, rather than that cost being spread across all customers.

19. The No-Surcharge Rule prevents other transaction media from competing for part of Visa's monopolistic market share. A company wishing to compete on price with Visa may do so, but the No-Surcharge Rule prohibits the customer from knowing of the price difference. Without the one party to the transaction that could choose between payment methods being aware of the cost differential, there is no motivation to use a less costly card. In fact, the inverse is true, since by using a Visa credit card, the individual is gaining perquisites that are being invisibly subsidized not only by the discount fees generated by that purchase, but also by the purchases of all of the merchant's other customers.

20. The first relevant market is the general purpose credit card services market encompassing the United States.

21. The second relevant market is the debit card services market, also encompassing the United States.

22. Entry into each of these markets is difficult due to the existence of significant barriers.

<u>CLASS ALLEGATIONS</u>

23. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff seeks certification of the following class:

> All merchants in the United States who accepted Visa credit cards from January 1, 2004 to the present.

6

24. Excluded from the class are Defendant and its member co-conspirators, their respective parents, subsidiaries and affiliates, and federal, state and local governments, governmental entities or political subdivisions, as well as any judicial officers and judicial staff presiding over this litigation.

25. The class is so numerous that joinder of all its members is impracticable. While the exact size of the class is presently unknown to Plaintiff, Plaintiff believes the members of the class to number at least in the thousands.

26. Questions of law and fact common to Plaintiff and the class members exist including the existence, scope, and effect of the combinations and conspiracies charged.

27. Defendant acted, and continues to act in a manner generally applicable to the class, such that the injunctive relief sought is applicable to the class as a whole.

28. Plaintiff will protect the interests of the class fairly and adequately, as the interests of Plaintiff are coextensive with, and not antagonistic to, those of the class. In addition, Plaintiff is represented by counsel experienced and competent in the prosecution of complex class actions and antitrust litigation.

29. Plaintiff is a member of the class. Plaintiff's claims are typical of the claims of class members because Defendant damaged Plaintiff and class members by the same wrongful conduct, alleged herein.

30. Plaintiff is an adequate representative of the class because Plaintiff paid fees for Visa transactions during the class period.

31. Questions of law and fact common to the members of the class also predominate over questions that may affect only individual members. Among the questions of law and fact common to the class are:

    a) The definition of the relevant market;

    b) Whether Visa and its member banks require as a condition of being able to accept Visa brand payment cards that merchants not assess a discrete surcharge to the consumer in the actual amount of the discount fee charged to the merchant;

    c) Whether the merchant discount rates that members of the class have been forced to pay for Visa brand payment card transactions are greater than the rates would be in the absence of the No-Surcharge Rule;

    d) Whether the No-Surcharge Rule demanded by Visa extends and bolsters its monopolistic position;

    e) Whether the imposition of the No-Surcharge Rule forces merchants to charge more to customers using lower cost payment means, such as cash, to compensate for the costs associated with also receiving Visa brand payment card;

    f) The measure of damages suffered by the class.

32. Questions of law and fact common to the class predominate over any questions affecting only individual members because the proof necessary to establish the antitrust violation focuses on the conduct of Defendant, not class members.

33. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Due to the expense of litigation and the relatively small size of many individual class members' claims, it is likely that many class members would never bring their claims to court without the use of the

8

class action procedural device. The use of the class action procedural device also will avoid duplicative lawsuits with potentially inconsistent results.

34. Given the size of the class and the relatively modest size of each individual damage claim, the efficiency of the class mechanism significantly outweighs any interest of class members in individually controlling the prosecution of separate actions.

35. Plaintiff does not anticipate encountering any difficulties in the management of this litigation.

## COUNT I

## MONOPOLIZATION OF CREDIT CARD SERVICES MARKET IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT

36. Plaintiff incorporates by reference paragraphs 1 through 35, as if fully set forth herein.

37. Defendant Visa has and exercises monopolistic power in the market for general purpose credit card services.

38. The No-Surcharge Rule protects Visa's monopoly power by ensuring that no competitor can capture part of Visa's market share by offering less expensive credit card services to merchants.

39. Visa's monopolization of the credit card services, secured by its No-Surcharge Rule, harms the competitive process and consequently, harms consumers.

9

40. No pro-competitive motivation or justification exists for the No-Surcharge Rule.

41. As a direct and foreseeable result of Visa's monopolization of the credit card services market through the enforcement of the No-Surcharge Rule, Plaintiff has been injured in a clearly calculable amount to be determined at trial.

## COUNT II

### MONOPOLIZATION OF DEBIT CARD SERVICES MARKET IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT

42. Plaintiff incorporates by reference paragraphs 1 through 41, as if fully set forth herein.

43. Defendant Visa has and exercises monopolistic power in the market for general purpose debit card services.

44. The No-Surcharge Rule protects Visa's monopoly power by ensuring that no competitor can capture part of Visa's market share by offering cheaper debit card services to merchants.

45. Visa's monopolization of the debit card services, secured by its No-Surcharge Rule, harms the competitive process and consequently, harms consumers.

46. No pro-competitive motivation or justification exists for the No-Surcharge Rule.

47. As a direct and foreseeable result of Visa's monopolization of the debit card services market through the enforcement of the No-Surcharge Rule, Plaintiff has been injured in a clearly calculable amount to be determined at trial.

## COUNT III

## **VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

48. Plaintiff incorporates by reference paragraphs 1 through 47, as if fully set forth herein.

49. Defendant Visa has and exercises monopolistic power in the markets for general purpose credit card services and debit card services.

50. The No-Surcharge Rule imposed on merchants by Visa is a vertical restraint effectively restraining competition in the markets for credit and debit card services.

51. The No-Surcharge Rule is anticompetitive. Through its use, Visa indirectly inflates the cost of consumer goods and services, subsidizes Visa's customer loyalty perquisites with funds paid by non-Visa using consumers, and prevents competition in the credit and debit card markets by making it impossible for a potential competitor to compete on price.

52. No pro-competitive motivation or justification exists for the No-Surcharge Rule.

53. As a direct and foreseeable result of Visa's monopolization of the credit card and debit card services market through the enforcement of the No-Surcharge Rule, Plaintiff has been injured in a clearly calculable amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.  Determine that this action be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Adjudge and decree that Defendant engaged in unlawful acts in violation of Section 2 of the Sherman Act;

C.  Adjudge and decree that Defendant engaged in unlawful acts in violation of Section 1 of the Sherman Act;

D.  Adjudge and decree that the No-Surcharge Rule, as maintained by defendant Visa, is illegal as it precludes members of the class from passing along a surcharge, at a disclosed rate, in the approximate amount of the actual discount fee applicable to the relevant transaction;

E.  Award damages in an amount to be proven at trial;

F.  Award attorney fees and expenses; and

G.  Grant such other, further and different relief as the Court may deem just and proper.

Dated: 08/03/05

By: *Dianne M. Nast*
Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000
(717) 892-1200 facsimile

Michael L. Roberts
ROBERTS LAW FIRM, P.A.
P.O. Box 241790
20 Rahling Circle
Little Rock, Arkansas 72223-1790
(501) 821-5775
(501) 821-4474 facsimile

*Counsel for Plaintiff Abdallah Bishara*
*d/b/a Uncle Abe's Phillip 66*

13